JOSEPH RABINOWITZ, Plaintiff, *v.* KAISER-FRAZER CORPORATION et al., Defendants.

Supreme Court, Special Term, Kings County, March 16, 1950.

*Willkie, Owen, Farr, Gallagher & Walton* for Kaiser-Frazer Corporation, defendant.

*Nemerov & Shapiro* for plaintiff.

WALSH, J. This is one of two separate motions made by two of the three named defendants appearing specially to vacate the service of the summons. The defendant Kaiser-Frazer Corporation moves for an order to vacate the service of a summons herein

on the ground that it was not served upon a proper person in accordance with section 229 of the Civil Practice Act. A third motion is made by the plaintiff for an examination pursuant to section 307 of the Civil Practice Act in the event that additional proof is needed with respect to the opposition to the motion to dismiss made by the defendant Kaiser-Frazer Corporation. A separate decision is published herewith on the motion of the defendant Bank of America National Trust and Savings Association to dismiss. (*Rabinowitz* v. *Kaiser-Frazer Corp.*, 198 Misc. 312.)

The application of the Kaiser-Frazer Corporation will be considered first. Kaiser-Frazer was incorporated under the laws of the State of Nevada. It has filed no certificate permitting it to do business in New York State, but, nevertheless, plaintiff asserts it is actually doing so; it is "here" (*Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259, 268). Service upon it was effected, plaintiff maintains, by delivery of a copy of the summons and complaint in New York City to one Angus J. Wiese, who describes himself as sales manager for the Kaiser-Frazer Sales Corporation, New York Division. Kaiser-Frazer Sales Corporation, chartered in Michigan but authorized to do business in New York State, is not named as a party defendant. The motion to dismiss service is based on the contention that the sales corporation is a separate corporate entity from the Kaiser-Frazer Corporation itself, in fact as well as in name. The position of the sales corporation as put by its vice-president, E. E. Trefethen Jr. (who is also vice-president of the defendant corporation), briefly is: "Kaiser-Frazer Corporation makes cars. It sells these to Kaiser-Frazer Sales Corporation which takes title to the cars. Kaiser-Frazer Sales Corporation then sells the cars to dealers who pay Kaiser-Frazer Sales Corporation. In these transactions both Kaiser-Frazer Corporation and Kaiser-Frazer Sales Corporation each acts for its own account and neither is responsible for the acts of the other, nor does either commit the other to act in any way."

Plaintiff challenges this claim. Plaintiff's position is that the independence of the sales corporation from the manufacturing corporation is nominal and a mere pretense, that actually the sales corporation functions either as the active and exclusive agent of the defendant manufacturing corporation in carrying on here a substantial part of the latter's business, or that it is a mere instrumentality of such corporation—that it is Kaiser-Frazer itself.

In support of such assertion plaintiff contends, and factually asserts, that Kaiser-Frazer, the Nevada corporation and parent

body, has an organizational set-up which consists of (1) the above sales corporation " which among other things hereinafter stated, markets and distributes the Kaiser-Frazer passenger automobiles and parts within the United States;" (2) Kaiser-Frazer Export Corporation, " which markets the same products outside the United States "; (3) Kaiser-Frazer of Canada, Ltd., " which is the Kaiser-Frazer outlet in Canada "; and (4) Kaiser & Frazer Parts Corporation " which operates rolling mills for the production of sheet metal for the use of Kaiser-Frazer in fabricating its automobiles and parts ". The four enterprises above named, although nominally independent corporate entities, actually function, plaintiff asserts, as mere departmental divisions of the Kaiser-Frazer Corporation's business, indicative of which is the following: although the parent corporation has outstanding stock of upwards of 5,000,000 shares, the sales corporation and the export corporation have outstanding shares of but one hundred each and the parts corporation, ninety, all of $100 par value. Kaiser-Frazer of Canada, Ltd. has outstanding 1,000 shares of no par value. The outstanding shares of all of the four corporations are in the exclusive ownership of the Kaiser-Frazer Corporation, the parent body. Not only are such corporations wholly owned subsidiaries, but they are also consolidated subsidiaries, and consolidated financial statements are made. Further summarizing the presentation made in its opposing affidavits, plaintiff, in his brief, continues (p. 7 *et seq.*):

" The subsidiaries are entirely dependent financially upon Kaiser-Frazer, operating on direct advances by KAISER-FRAZER or through the use of KAISER-FRAZER'S credit. They are in no sense independent subsidiaries which can stand on their own feet and rely upon their own resources. At the end of 1948, advances by KAISER-FRAZER to its subsidiaries aggregated over $14,000,000., of which amount the SALES CORPORATION had received almost $7,000,000. Just as departments of a corporation would not pay interest on their allotted appropriations, *the wholly-owned subsidiaries have not been paying interest upon these advances.* Furthermore, less than 15% of the total consolidated assets and consolidated gross revenues are attributed to these subsidiaries *combined.* As would naturally be the case, the subsidiaries have never paid dividends to KAISER-FRAZER. Banks, other financing institutions and government agencies have continuously required KAISER-FRAZER to guarantee repayment of loans made by them to the subsidiaries. Building Loan Agree-

ments and Assignments of Accounts in 1948, between KAISER-FRAZER and KAISER & FRAZER PARTS CORP., on the one hand, and the First Security Trust Co., on the other, required KAISER-FRAZER to become co-maker with its subsidiary upon notes aggregating approximately $400,000. The 1949 loans of the Reconstruction Finance Corporation (R.F.C.) to KAISER-FRAZER and the SALES CORPORATION, of which $10,000,000. was allotted to the SALES CORPORATION, were made upon the guarantee of KAISER-FRAZER to repay the portion of the loan allotted to the SALES CORPORATION, for *the value of the assets of the SALES CORPORATION did not even equal the amount of the loan.*

" Directors and executive officers of the subsidiaries are also directors and executive officers of KAISER-FRAZER, just as a corporation would pay the salaries of its departmental officers, so KAISER-FRAZER has paid the *entire* salaries of executive officers for services rendered to both KAISER-FRAZER and the SALES CORPORATION or its other subsidiaries. There have also been instances in which a *subsidiary* has paid the *entire* salaries of executive officers common to both KAISER-FRAZER and itself. This in itself manifests a complete disregard, within the KAISER-FRAZER structure itself, of the distinct corporation entities of the subsidiaries.

" Furthermore, executive offices of both KAISER-FRAZER and the SALES CORPORATION are located at the New York Division of the SALES CORPORATION, at No. 1710 Broadway, New York City, where business affairs of an executive nature are conducted for both KAISER-FRAZER and the SALES CORPORATION.

" The three chief centers of operations of KAISER-FRAZER are at its main production plant in Willow Run, Michigan, and at its factory branches in the New York City and Los Angeles areas. The SALES CORPORATION, a Michigan corporation but qualified to do business in the State of New York, has established permanent places of business in the New York City area for the conduct of its varied operations which are confined exclusively to KAISER-FRAZER."

Other factual data is offered in support of plaintiff's claim that the separate identity of the sales corporation is nominal only.

Kaiser-Frazer makes no attempt to answer or refute the analysis of its corporate set-ups, contenting itself with a mere reiteration of its separate corporate entity as the basis for the

vacatur of service. In this respect it has put itself, in my opinion, in the same position of disadvantage as that referred to in the recent New York Court of Appeals decision in *Sterling Novelty Corp.* v. *Frank & Hirsch Distributing Co.* (299 N. Y. 208) and the case of *Society Milion Athena, Inc.* v. *National Bank of Greece* (166 Misc. 190, affd. 253 App. Div. 650, leave to appeal denied 254 App. Div. 836), cited in plaintiff's papers. In the latter case Mr. Justice SHIENTAG (p. 198)—putting in more expansive expression the same view of Judge FULD (*Sterling* case, *supra*, p. 212) — said: " The affidavits in reply are silent as to the specific allegations of fact contained in the plaintiffs' affidavits. They content themselves with statements of conclusions and the assertion of blanket denials without any specific denial of the facts alleged. Affidavits of this type, containing no detailed denials of the activities relied on to sustain the service, although the actual relationship between the corporations is peculiarly within the knowledge of the affiants, are insufficient to prevent the acceptance as true of the facts stated in the plaintiff's affidavits. (*Industrial Research Corp.* v. *General Motors Corp.*, 29 F. 2d 623.) "

The *Industrial Research* case above cited is closely similar in many of its aspects to this. There the service on an agency and instrumentality of General Motors Corp. was upheld.

The moving defendant, Kaiser-Frazer, relies heavily, almost wholly, on the authority of *Cannon Mfg. Co.* v. *Cudahy Packing Co.* (267 U. S. 333). This case is distinguishable and noncontrolling.

Incidentally, an additional basis for vacating service herein (apparently in the event that the sales corporation be held to be an agent or departmental instrumentality of Kaiser-Frazer) is that plaintiff has not shown proper and sufficient compliance with section 229 of the Civil Practice Act in re (1) inability to find and effect service within the State on one of the officers of the defendant corporation specified in subdivision 1 of such section, and (2) that Wiese's duties do not qualify him as a " managing agent " within the statutory contemplation of subdivision 3.

This latter angle of attack is not impressive. Unsuccessful efforts to serve one of the corporate officers is shown to have been made. As was said by Judge LEARNED HAND in *Bomze* v. *Nardis Sportswear* (165 F. 2d 33, 37): " The statute does not impose on a plaintiff the duty of waiting till some officer appears; he may choose his own time to sue. * * * so that

all the plaintiff had to do was to make reasonable effort, when they did seek to serve the process, to serve any officer or director who was then within the state.''

As to Wiese's qualification as an officer of sufficient executive importance to come within the statutory contemplation of a '' managing agent,'' the statutory purpose, as stated in numerous decisions, is satisfied when service is effected on one of sufficient rank to justify an assumption that notice to him will be transmitted to the corporation (*Tauza* v. *Susquehanna Coal Co., supra,* p. 269). A '' sales manager '' obviously falls within such category. Wiese in his affidavit of December 21, 1949, so describes his title. In his reply affidavit of January 26, 1950, he appears to have made a planned retreat from this. But, as stated in *Rice* v. *Frederick Iron & Steel Co.* (N. Y. L. J., Nov. 21, 1949, p. 1314, col. 5): '' Defendant may not do this [i.e., describe an officer, for example, as sales manager] ' as a gratuitous gesture merely to impress the prospective client * * * ' and deny the agent's authority when process is served.''

Sufficient has been indicated herein to warrant a denial of the motion of Kaiser-Frazer to dismiss the service or to grant plaintiff's cross motion for an examination pursuant to the provisions of section 307 of the Civil Practice Act and rule 120 of the Rules of Civil Practice for the purpose of eliciting information from Leslie Randall, Assistant Secretary of the Kaiser-Frazer Sales Corporation and its general manager in this area, and August J. Wiese, sales manager. Such an examination is directed to be had before an official referee to hear and report, and the motion to vacate the service is held in abeyance pending the coming in of the report of the official referee. (See *McQuade* v. *Prudential Ins. Co. of America,* 166 Misc. 524.) Settle order on notice.