**ADVANCE COATING TECHNOLOGY, INC., et al., Plaintiffs,**

v.

**LEP CHEMICAL LTD., et al., Defendants.**

**No. 90 Civ. 1752 (WCC).**

United States District Court, S.D. New York.

May 7, 1992.

Plunkett & Jaffe, P.C., New York City, (Arthur J. Semetis, of counsel), for plaintiffs.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City (Eugene H. Kline, Martin H. Samson, of counsel), for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Defendants LEP Industrial Holdings, Ltd. ("Industrial") and LEP Group PLC ("Group") moved to dismiss the Complaint in this action pursuant to Rule 12(b)(2), Fed.R.Civ.P., for lack of personal jurisdiction. By Memorandum Decision dated January 28, 1991, familiarity with which is presumed, this Court referred the motion to Chief Magistrate Judge Nina Gershon, pursuant to 28 U.S.C. § 636(b)(1)(B), for a hearing and report. On March 9, 1992, Chief Magistrate Judge Gershon filed her Report and Recommendation (the "Report"), in which she recommended that the action against Group be dismissed since plaintiffs had not made a prima facie showing of jurisdiction as against that entity. The Magistrate recommended that the action as against Industrial proceed to trial since plaintiffs had made the required prima facie showing of jurisdiction over it. Report at 10–11.[1]

Defendants object to that part of the Report that refused to dismiss for lack of personal jurisdiction as to Industrial. Defendants argue that, properly interpreted, the evidence submitted by both sides cannot support Magistrate Gershon's conclusion that plaintiffs had made a prima facie showing of jurisdiction over Industrial. Having considered *de novo* those portions of the Magistrate's Report to which defendants have objected, the Court hereby adopts the Report in its entirety.

## BACKGROUND

This action arises out of the sale by LEP Chemical Ltd. ("Chemical") to plaintiffs Advance Coating Technology, Inc. ("ACT") and Molecular Engineering and Maintenance Systems Company ("MEMSCO") of belt repair products which it manufactured, and an alleged distribution agreement between plaintiffs and Chemical concerning the same. Chemical is a wholly-owned subsidiary of Industrial, which, in turn, is a wholly-owned subsidiary of Group. Each of the three defendants is organized under the laws of England. Plaintiffs have sued defendants for alleged fraud in the inducement, breach of contract, and breach of express and implied warranties.

## DISCUSSION

*Standard of Review*

■ Magistrates are empowered by statute to preside over pretrial matters upon being appointed by a district judge. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. Rule 72(a). Rule 72(b), Fed.R.Civ.P., instructs a district court judge to "make a *de novo* determination ... of any portion of the magistrate's disposition to which specific written objection has been made...." *See also* 28 U.S.C. § 636(b)(1); *East River Savings Bank v. Secretary of HUD*, 702 F.Supp. 448, 453 (S.D.N.Y.1988). After conducting its review, the court may then "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). The rule also permits the court to accept any portion of a magistrate's disposition to which no objection has been made as long as there is no clear error on the face of the record. *See* Rule 72, Fed.R.Civ.P., Notes of Advisory Committee on Rules (citing *Campbell v. United States District Court*, 501 F.2d 196, 206 (9th Cir.), *cert. denied*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974)).[2]

■ A district court's obligation to make a *de novo* determination of properly contested portions of a magistrate's report does not require a second evidentiary hearing. *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980). The judge's review may be

---

1. The Report of the Magistrate is annexed hereto.

2. The parties do not object to that portion of the Report which recommends that this Court dismiss the action against Group for lack of *in personam* jurisdiction. Having reviewed the record and finding no clear error on the face thereof with respect to this finding, the Court adopts that part of the Report that finds plaintiffs have failed to make a prima facie showing of jurisdiction over Group. Accordingly, the Complaint as to Group is dismissed with prejudice.

based solely upon the record. Fed.R.Civ.P. Rule 72(b). "To this end, the court must 'exercise ... sound judicial discretion with respect to whether reliance should be placed on [the magistrate's] findings.'" *East River*, 702 F.Supp. at 453 (quoting *American Express Int'l Banking Corp. v. Sabet*, 512 F.Supp. 472, 473 (S.D.N.Y.1981), *aff'd without opinion*, 697 F.2d 287 (2d Cir.), *cert. denied*, 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982)).

In making its determination, this Court has reviewed the transcript of the conference conducted by Magistrate Gershon on October 30, 1991, all briefs, memoranda, and letters submitted by counsel, Magistrate Gershon's Report, defendants' objections to the Report, and plaintiffs' response thereto.

*Timeliness of the Objections*

■ Contrary to plaintiffs' assertions, defendants' objections to the Report were filed within the time permitted pursuant to 28 U.S.C. § 636(b). Under 28 U.S.C. § 636(b) and Rule 72(b), Fed.R.Civ.P., a party has ten days after being served with a recommendation of a magistrate in which to file any objections thereto. However, in computing the time available to file objections, the Court must take into consideration Fed.R.Civ.P. Rule 6(a) and (e). Under Rule 6(a), when a "time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation." Additionally, when the last day for taking an action falls on a Saturday or Sunday, it is extended until the following Monday. Rule 6(e) adds three days to a response period whenever the responding party is served by mail.

Therefore, under Rule 6(a), defendants' filing of objections on March 23, 1992 was timely. Magistrate Gershon's Report was served on defendants by mail on March 9, 1992. Ten days from March 9, excluding the weekend of March 14–15, falls on Saturday, March 21. Accordingly, under Rule

6(a), defendants had until Monday, March 23, 1992, to file objections, even without taking into consideration the additional three days defendants were granted under Rule 6(e) due to the mailing of the Report. *Cf. Nalty v. Nalty Tree Farm*, 654 F.Supp. 1315 (S.D. Ala.1987) (objection to magistrate's report was timely filed after ten-day period for filing was extended through application of Rule 6(a), which excluded intervening Saturdays, Sundays, and legal holidays, and through application of Rule 6(e), which added three additional days for mailing).[3]

*Jurisdiction over Industrial*

■ A district court has "considerable procedural leeway" in deciding a pre-trial motion to dismiss for lack of personal jurisdiction. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). "It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion or it may conduct an evidentiary hearing on the merits of the motion." *Id.* (citations omitted). Although plaintiffs have the ultimate burden of establishing jurisdiction over defendants by a preponderance of the evidence, where the court chooses not to conduct a full-blown evidentiary hearing on the motion, plaintiff need only make a prima facie showing of jurisdiction through its own affidavits and supporting materials. *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986) (citing *Marine Midland*, 664 F.2d at 904). Those documents are to be construed in the light most favorable to the plaintiff, even where there is a "controverting presentation by the moving party." *Hoffritz For Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985) (citation omitted).

In the instant case, plaintiffs were permitted opportunities to conduct discovery concerning the interrelationship of the three defendants. Plaintiffs did not avail themselves of these opportunities, and instead, requested that the court consider further documentary submissions in lieu of

---

**3.** Even if the additional three days allowed by Rule 6(e) are added to the ten days allowed by Rule 72(b), to increase the total time to thirteen days, above the eleven-day limit for exclusion of weekends and holidays, the time for filing the objections would have expired on March 22, a Sunday, so that the filing on Monday, March 23 would still have been timely.

an evidentiary hearing. At a conference held before Magistrate Gershon on October 30, 1991, plaintiffs agreed to proceed on submission with the understanding that they might not be given a further opportunity to obtain discovery and a hearing. Accordingly, since no "full-blown evidentiary hearing" was held, only a "threshold" showing of jurisdiction, "sufficient to demonstrate the fairness of allowing the suit to continue," need be made. *Cranston Print Works Co. v. Brockmann Int'l, A.G.*, 521 F.Supp. 609, 613 (S.D.N.Y.1981).

Although plaintiffs originally asserted three grounds of jurisdiction over Industrial, plaintiffs limited their supplemental submissions to proof that Chemical has no independent existence and is a "mere department" of Industrial and Group pursuant to § 301, N.Y.Civ.Prac.L. & R. In *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir.1984), the Court of Appeals for the Second Circuit listed four factors to consider in determining whether a subsidiary is a "mere department" of its parent such that the activities of the subsidiary in the state may support a finding of *in personam* jurisdiction over the parent: (1) common ownership; (2) financial dependency; (3) interference in the selection and assignment of the subsidiary's executive personnel and failure to observe corporate formalities; and (4) interference with subsidiaries' marketing and operational policies. 751 F.2d at 120–22.

Each of the *Volkswagenwerk* factors need not weigh entirely in plaintiffs' favor. The only essential factor to the assertion of jurisdiction over a foreign related corporation is common ownership, which is undisputed in the instant case. The other three factors are important, however, and the Magistrate correctly concluded that the evidence submitted relating to each weighs in favor of a finding of personal jurisdiction over Industrial. While it is true that unlike the plaintiffs in *Volkswagenwerk*, plaintiffs here have not shown that Chemical was *wholly* financially dependent on its parent to stay in business, such a showing is not necessary. *Volkswagenwerk* neces-

sitates a balancing process. In the instant case, the Magistrate found that "the guarantees to a prospective high level employee of salary protection; the assurances to him that the company would be fully funded by the parent; the granting of a below market value lease to the subsidiary for its manufacturing plant; and the provision of interest-free loans [by Industrial] ..." indicate some measure of financial dependence. Report at 6. That finding is sufficient.

Defendants' objections to the Report amount to nothing more than an attempt to substitute their interpretation of the evidence for that of the Magistrate. Considering the documentary submissions in the light most favorable to plaintiffs, as it must for the purposes of this motion, the Court agrees with Magistrate Gershon that plaintiffs have made a prima facie showing that Chemical is a "mere department" of Industrial. While plaintiffs may not ultimately be able to establish this Court's jurisdiction over Industrial, the final jurisdictional determination shall be made in conjunction with a trial on the merits as permitted by Rule 12(d), Fed.R.Civ.P. *See Bialek v. Racal–Milgo, Inc.*, 545 F.Supp. 25 (S.D.N.Y.1982).

## CONCLUSION

For the foregoing reasons, Magistrate Gershon's report and recommendation is accepted in its entirety.

SO ORDERED.

## REPORT AND RECOMMENDATION

GERSHON, United States Magistrate Judge:

In a Memorandum decision dated January 28, 1991, the Honorable William C. Conner, District Judge, deferred decision on the motion by defendants LEP Industrial Holdings, Ltd. ("LEP Industrial") and LEP Group PLC ("LEP Group") to dismiss for lack of personal jurisdiction pending an evidentiary hearing before me. In preparation for this hearing, Judge Conner permitted plaintiffs to take discovery "to determine the extent of defendants' financing of [the non-moving defendant] LEP Chemi-

cal's activities, their control, if any, over the supervisory personnel and day-to-day operations of LEP Chemical, and the extent to which, if any, LEP Industrial and/or LEP Group transact business in New York, either directly or through the activities of their other subsidiaries." Mem. p. 11.

Discovery was then held in abeyance approximately five months pending a motion by plaintiffs' counsel to withdraw from the litigation. By late summer 1991, the motion had been withdrawn and plaintiffs decided to proceed with the litigation. Plaintiffs then served discovery notices on defendants. Defendants, in response, notified plaintiffs of the availability of the documents requested in their home offices in England and of the availability of the requested witnesses in England, where the witnesses live. Plaintiffs have not availed themselves of these opportunities to conduct discovery. Instead, they have requested that the court consider further documentary submissions, in lieu of an evidentiary hearing, claiming that these submissions will establish, in a more economical fashion, a *prima facie* showing of jurisdiction.[1]

Defendants also seek to have the jurisdictional issues resolved without a hearing, and they do not object to the procedure sought by plaintiffs. However, defendants object to plaintiffs' position that, if jurisdiction is not shown *prima facie* on the documentary evidence, plaintiffs should be permitted to take the discovery that has been available to them for many months and present evidence at a hearing. At a conference before me on October 30, 1991, these positions were reviewed, and plaintiffs were given the option of proceeding to discovery and a hearing or proceeding on papers, with the understanding that if plaintiffs chose the latter option and were unsuccessful, they might not be given a further opportunity to obtain discovery and a hearing. Plaintiffs chose to proceed on papers.

Plaintiffs originally asserted three grounds of jurisdiction: first, that LEP Chemical was the agent of LEP Industrial and LEP Group; second, that it was the alter ego of these entities; and third, that these defendants were themselves doing business in New York and thus subject to personal jurisdiction under New York CPLR § 301. Plaintiffs had no evidence to support the latter claim and were given the opportunity to conduct discovery. They did not use this opportunity and have not offered any evidence to support this theory of jurisdiction.

As for the theory of agency, despite their opportunity to conduct discovery, plaintiffs have offered no additional evidence to support their claim that LEP Chemical is merely an agent of the moving defendants. As stated by Judge Conner:

> To be considered an agent for jurisdictional purposes, the alleged agent must have acted in the state "for the benefit of, and with the knowledge and consent of" the non-resident principal. *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 122 (2d Cir.1981); *Plaza Realty Investors v. Bailey,* 484 F.Supp. 335, 347 (S.D.N.Y.1979). The agent must act "at the request and for the business purposes of" the principal. *Galgay v. Bulletin Co.,* 504 F.2d 1062, 1065 (2d Cir. 1974).

1. As Judge Conner noted, where a full evidentiary hearing is held, the parties asserting jurisdiction must demonstrate it by a preponderance of the evidence. *See* Mem. p. 2; *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981). However, the court has the discretion to proceed on written submissions, and, if that procedure is followed, only a "threshhold" showing of jurisdiction, "sufficient to demonstrate the fairness of allowing the suit to continue," need be made. *Cranston Print Works Co. v. Brockmann Intern, A.G.,* 521 F.Supp. 609, 613 (S.D.N.Y.1981). A *"prima facie"* showing of facts sufficient to show jurisdiction will meet this burden. *Id.; Marine Midland Bank, N.A.,* 664 F.2d at 904.

In the absence of an evidentiary hearing or trial, the documentary record must be construed in the light most favorable to the plaintiff, even where there is a "controverting presentation by the moving party." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985) (quoting *Marine Midland Bank, N.A.,* 664 F.2d at 904). *Accord Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), *cert denied,* —— U.S. ——, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990).

Mem. p. 8. Plaintiffs have not pursued this theory of jurisdiction. In their supplemental papers, they have neither pointed to facts, nor made any argument, in its support.

*LEP Industrial*

The theory plaintiffs pursue is that LEP Chemical is the alter ego, that is, a "mere department," of LEP Industrial. As Judge Conner recognized, in *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120–122 (2d Cir.1984), the Court of Appeals for the Second Circuit, discussing the applicable New York cases, listed four factors to consider in deciding whether a subsidiary is a mere department of its parent. The first, common ownership, is undisputed here. But this factor, while essential to a finding of jurisdiction over the parent, *Delagi v. Volkswagenwerk A.G.*, 29 N.Y.2d 426, 432, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972), does not in itself confer jurisdiction. "The officers of any corporation that owns the stock of another necessarily exercise a considerable degree of control over the subsidiary corporation and the discharge of that supervision alone is not enough to subject the parent to New York jurisdiction. *See Saraceno v. S.C. Johnson & Son, Inc.*, 83 F.R.D. 65 (S.D.N.Y.1979)." *Volkswagenwerk*, 751 F.2d at 120.

The second factor to be considered is financial dependency. Here, plaintiffs have made a *prima facie* showing of some measure of financial dependency. Defendants have not refuted (nor even rebutted) the statement of Jaap Mastenbroek, the manager of European sales for LEP Chemical from February to August 1988, that he was approached by Terry Colley and David Scott in early 1987, six months before the legal formation of LEP Chemical, to join a new company to be formed by LEP Group and LEP Industrial. Mastenbroek Statement[2] ¶¶ 1, 3. Scott, who identified himself as a high level official of LEP Industri-

al, told Mastenbroek that LEP Group and LEP Industrial were establishing a division to make and distribute chemical specialty products; and Scott stated, as an inducement to Mastenbroek to join the new company, that LEP Industrial would guarantee his salary. Mastenbroek Statement ¶¶ 3, 4, 5. Mastenbroek also states that Scott told him the parent "would finance the entire company." *Id.*, ¶¶ 4, 5. Defendants do not deny that Mastenbroek was so informed by Scott, but claim that the important issue is whether the parent did in fact fund LEP Chemical. On this subject, LEP Industrial has acknowledged that in 1988 LEP Chemical "received 111,000 British pounds in loans" from LEP Industrial. Scott Afft. of Sept. 17, 1990 ¶ 17. LEP Industrial does not state whether these loans were made at market rates or were interest free.

In addition, LEP Industrial has acknowledged that LEP Chemical rented its manufacturing and lab space from an LEP entity for 14,710 pounds a year commencing in January of 1988 and that, after LEP Chemical vacated the space, it was relet to Johnson & Jorgensen Limited, "an entity that is not affiliated with LEP Group in any way," for 24,000 pounds per year. Theo Afft. of Dec. 9, 1991 ¶ 19. This suggests that the rental to LEP Chemical was below market price and thus supports plaintiffs' claim that LEP Chemical was financially dependent on its parent.

Unlike the plaintiff in *Volkswagenwerk*, plaintiffs here have not shown that LEP Chemical was wholly financially dependent on its parent to stay in business. But the showing plaintiffs have made of financial dependence weighs in favor of finding personal jurisdiction. After all, the guarantees to a prospective high level employee of salary protection; the assurances to him that the company would be fully funded by the parent; the granting of a below market value lease to the subsidiary for its manufacturing plant; and the provision of interest-free loans[3] may have been critical to

2. The Mastenbroek Statement submitted by plaintiffs was signed by Mastenbroek but not sworn to before a notary. Defendants do not contest its authenticity and treat it as an affidavit.

3. In light of defendants' failure to specify an interest rate for the loans to LEP Chemical, it is reasonable at this stage of the proceedings to give plaintiffs the benefit of the doubt on this issue. *See Hoffritz for Cutlery, Inc.*, 763 F.2d at

LEP Chemical's ability to operate. *See, e.g., Boryk v. deHavilland Aircraft Co.*, 341 F.2d 666, 668 (2d Cir.1965) (parent made no-interest loan to wholly owned subsidiary). *Cf. Morse Typewriter v. Samanda Office Communications*, 629 F.Supp. 1150, 1153 (S.D.N.Y.1986) (all loans to financially independent subsidiary from the parent were at competitive market rates).

The next factor identified in *Volkswagenwerk* is interference in the selection and assignment of the subsidiary's executive personnel and failure to observe corporate formalities. It is undisputed that, from the time of its formation until February 1989, LEP Chemical's Board was comprised of the same three individuals who comprised LEP Industrial's Board, namely, David Scott, Philip Theo and Terry Brown. Scott Afft. of Sept. 17, 1989 ¶ 16. (In February 1989, Alan Bates, who did not sit on the LEP Industrial Board, was added to the LEP Chemical Board. *Id.; See also* Bates Afft. ¶¶ 1, 3; Theo Afft. of Dec. 9, 1991 ¶ 18). Plaintiffs also rely on the absence of independent offices for the Board members, who worked out of their LEP Industrial offices.

In addition, it was these three individuals who were responsible for hiring not only the General Manager, Terry Colley, but also Mastenbroek and Colley's replacements. *See* Scott Afft. of Sept. 17, 1990 ¶ 16. These facts support plaintiffs' argument that the parent did not observe corporate formalities, that it was intimately involved in the selection of executive personnel, and that the subsidiary was not an independent entity.

The most significant additional evidence that plaintiffs have proferred relates to the fourth factor identified in *Volkswagenwerk*, the degree of control exercised by the parent over the subsidiary's marketing and operational policies. Before addressing the new evidence, the evidence relied upon by plaintiffs before Judge Conner will be reviewed. First, plaintiffs noted the use

of the identical logo, trademark and trade dress as supporting the lack of corporate separateness of LEP Chemical and LEP Industrial. Second, Scott identified LEP Industrial as a holding company with no independent functions other than the "acquiring and/or founding" and supervision of its subsidiaries. Scott Afft. of Sept. 17, 1990 ¶ 13. Third, LEP Industrial acknowledged that it exercised control over the total amount of LEP Chemical's budget and controlled capital expenditures. These facts, in themselves, would not necessarily be inconsistent with LEP Chemical being an independently functioning subsidiary. *See, e.g., Saraceno*, 83 F.R.D. at 68–70.

However, in their supplemental papers plaintiffs offer the statements of former high level employees of LEP Chemical to the effect that David Scott exercised a degree of supervisory control over LEP Chemical's operations which is inconsistent with independence. David Payne states that, between September 1987 and September 1988, he was in charge of Product Development at LEP Chemical. Payne Afft. ¶ 1. In that capacity, he reported "to both Terry Colley and David Scott," and "David Scott exercised direct control over LEP Chemical's business activities." *Id.*, ¶ 4. Payne further states that "in March or April of 1988, Ronald Foster and I were assigned by David Scott to oversee the manufacture of a new product of LEP Chemical" and that "Ronald Foster reported directly to David Scott on a regular basis because (a) he was appointed by David Scott and (b) he did not like or trust Terry Colley. I believe that David Scott used Ronald Foster as 'an inside source of information' in order to monitor Terry Colley's activities." *Id.*, ¶ 5. Payne spoke to both Phil Theo and David Scott "on a regular basis" about "the product line and business of LEP Chemical." *Id.*, ¶ 7. Both were "regular visitors to the Manchester manufacturing facilities of LEP Chemical."

---

57. While plaintiffs did not take discovery, defendants described the loans in order to rebut plaintiffs' claim of full funding by the parent. Defendants could easily have identified a market interest rate had the loans borne such a rate.

Moreover, Scott has acknowledged that LEP Industrial "has also on occasion advanced funds to its subsidiaries." Scott Afft. of Sept. 17, 1990 ¶ 15.

*Id.* Terry Colley, the General Manager of LEP Chemical from its creation in June 1987 to August 1988, also states that "Full scale production, marketing and sale of the [belt repair] product[4] was done with the approval of and under the direction of David Scott of LEP Industrial...." Colley Afft. ¶ 3.

While defendants have refuted, through documentary evidence, plaintiffs' claims that LEP Chemical had no direct involvement with its own payroll and finances, and that all financial activities were channeled through LEP Industrial, they have not refuted the claim of operational control. Mastenbroek states, in an affidavit submitted by defendants, that he was manager of European sales for LEP Chemical from February 1988 to August 1988, and LEP Chemical's manager of all sales outside of England from August 1988 to December 1989. Mastenbroek Afft. of Sept. 20, 1990 ¶ 1. During this time, according to Mastenbroek's affidavit, "[LEP] Chemical was an autonomous subsidiary of [LEP Industrial] which ran its own day-to-day operations." *Id.*, ¶ 2. Neither Scott, nor anyone else at the parent, assumed control of LEP Chemical's day-to-day operations. *Id.*, ¶ 4. However, in the later Statement submitted by plaintiffs, Mastenbroek states that, "In my position with LEP Chemical, I reported directly to Terry Colley, who, in turn, reported directly to David Scott at LEP Industrial headquarters in Southhampton, England." Mastenbroek Statement ¶ 7. Mastenbroek further states: "I also spoke with David Scott concerning the problems with the belt repair product shortly after I became aware of them in early 1988. Mr. Scott advised me that he was aware of the product deficiencies and was attempting to solve these problems. He indicated that he had placed a new chemist at the manufacturing plant in Manchester and that he was doing everything in his power to correct these deficiencies." *Id.*, ¶ 10. Scott and Theo have submitted affidavits denying the degree of control by Scott asserted by Payne and Colley. Scott acknowledges that during a six-month period he "took a

more active supervisory role of Chemical's operations," but states that "[a]t no time" did he control LEP Chemical's day-to-day affairs. Scott Afft. of Sept. 17, 1990 ¶¶ 23, 24; *see* Theo Afft. of Dec. 9, 1991 ¶ 13; *see also* Bates Afft. ¶¶ 2, 5. The affidavits submitted by defendants merely rebut, they do not refute, plaintiffs' showing and, therefore, do not justify pre-trial dismissal. *Bialek v. Racal–Milgo, Inc.*, 545 F.Supp. 25, 33–34 (S.D.N.Y.1982); *see Marine Midland Bank, N.A.*, 664 F.2d at 904.

Plaintiffs' *prima facie* showing of operational control significantly distinguishes this case from those like *Saraceno*, 83 F.R.D. at 69–71; *H. Heller & Co., Inc. v. Novacor Chemicals Ltd.*, 726 F.Supp. 49, 54–55 (S.D.N.Y.1988), *aff'd*, 875 F.2d 856 (2d Cir.1989); *Larball Pub. Co., Inc. v. CBS, Inc.*, 664 F.Supp. 704, 707 (S.D.N.Y. 1987), and *Morse Typewriter*, 629 F.Supp. at 1153–54, relied upon by defendants. Under New York law, plaintiffs have made a *prima facie* showing of jurisdiction over LEP Industrial. *See Taca International Airlines, S.A. v. Rolls–Royce of England, Ltd.*, 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965). Moreover, it is now clear that the testimony of David Scott and of LEP Chemical's former employees will in large measure determine not only the merits but the jurisdictional issues. Under these circumstances, it is especially appropriate to have the final jurisdictional determination made in conjunction with the trial on the merits. *See, e.g., Cranston Print Works Co.*, 521 F.Supp. at 613–614.

*LEP Group*

Plaintiffs have offered no facts bearing on personal jurisdiction over LEP Group which were not presented before Judge Conner. These facts are clearly insufficient to support personal jurisdiction. It is undisputed that there is common ownership of LEP Chemical and LEP Group, but that is not enough. On the factor of financial dependency, plaintiffs have shown only that LEP Group provided LEP Chemical with a non-binding "comfort letter" to Lloyd's Bank, which lent funds to LEP Chemical. Other than the use of the same

---

4. This is the product at issue in this case.

logo, trademark and trade dress, plaintiffs have not shown any interference by LEP Group with LEP Chemical's marketing and operational policies. Plaintiffs do not dispute Scott's statement that he has never been an employee, director or officer of LEP Group. Scott Afft. of Sept. 17, 1990 ¶ 21. Therefore, Scott's actions cannot serve as a basis for jurisdiction over LEP Group.

As for interference with the selection and assignment of the subsidiary's executive personnel and failure to observe corporate formalities, all that plaintiffs have shown is that LEP Group files consolidated financial reports that include LEP Chemical. The filing of consolidated financial reports by the parent is not in itself sufficient to indicate a lack of autonomy where, as here, the subsidiary has its own books, records and bank accounts. *See, e.g., Larball Pub. Co., Inc.*, 664 F.Supp. at 707. Plaintiffs argued before Judge Conner that LEP Group's characterization of LEP Chemical as a "division" means that it is a mere department. Defendants responded that, in English usage, the term "division" is entirely compatible with its being an autonomous, wholly-owned subsidiary which runs its own affairs. Plaintiffs have added nothing as to the significance of the term, beyond what they argued before Judge Conner. Accordingly, the mere use of the term "division" cannot be said to advance plaintiffs' cause.

In sum, plaintiffs have not made a *prima facie* showing of jurisdiction against LEP Group. Nor should they be given a further opportunity to conduct discovery on this issue. *See Saraceno*, 83 F.R.D. at 71–72.

### CONCLUSION

The motion to dismiss the complaint against LEP Industrial should be denied. The motion to dismiss the complaint against LEP Group should be granted.

Copies of this report are being mailed today to plaintiffs' and defendants' counsel who are hereby put on notice that any objections to this report must be made in conformity with 28 U.S.C. 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thus, a party must serve and file, with a copy to me, specific written objections to the report within ten (10) days after being served with a copy of this report. A party that fails to file timely objections waives the right to further judicial review, including appellate review, of the decision. *Small v. Secretary of HHS*, 892 F.2d 15, 16 (2d Cir.1989). *See Thomas v. Arn*, 474 U.S. 140, 148–53, 106 S.Ct. 466, 471–74, 88 L.Ed.2d 435 (1985); *Wesolek v. Canadair Ltd*, 838 F.2d 55, 58 (2d Cir.1988). Any requests for extensions of time to file objections should be made to Judge Conner.