751 F.2d 117
 40 Fed.R.Serv.2d 982
 VOLKSWAGENWERK AKTIENGESELLSCHAFT, Allianz
Versicherungs-Aktiengesellschaft and Deutscher
Luftpool, Plaintiffs-Appellants,
v.
BEECH AIRCRAFT CORPORATION and The Beechcraft Organization
and John Doe Defendants "I" through "III,"
Defendants-Appellees.
 No. 87, Docket 84-7395.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 4, 1984.
Decided Dec. 20, 1984.
 
 Herbert Rubin, New York City (Ian Ceresney, David B. Hamm, Herzfeld & Rubin, P.C., New York City, of counsel), for plaintiffs-appellants.
 Joseph J. Asselta, New York City (Bruce R. Wildermuth, Mendes & Mount, New York City, of counsel), for defendants-appellees.
 Before KAUFMAN and WINTER, Circuit Judges, and WYZANSKI, District judge.*
 WINTER, Circuit Judge:
 
 
 1
 Volkswagenwerk Aktiengesellschaft ("VW") et al. appeal from Judge Costantino's granting of Beech Aircraft Corporation's ("Beech") motion to dismiss for lack of in personam jurisdiction in this diversity case.[1] The district court determined that Beech was not "doing business" in New York and thus not subject to in personam jurisdiction. Because we find that Beech was doing business in New York through a wholly owned local subsidiary, we reverse.
 
 
 2
 VW alleges in its complaint that on April 16, 1980, a King Air 200 aircraft, manufactured by Beech, crashed on landing at Bremen, West Germany. On June 30, 1983, VW filed this suit against Beech. (A companion action was also filed in the District of Kansas, where Beech's home office is located, to prevent the running of the statute of limitations in that jurisdiction.) VW claimed that the landing gear was defectively designed and/or manufactured and that Beech was liable for VW's losses.
 
 
 3
 Beech moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(2) on the grounds that Beech was not within the jurisdiction of the court, or in the alternative, to transfer the action to the district court in Kansas under 28 U.S.C. Sec. 1404(a) (1982). The district court denied the motion without prejudice. The parties then conducted discovery, which revealed that Beech has its headquarters and manufacturing facilities in Kansas and markets its aircraft principally through a network of independent and wholly owned dealers. In the New York area Beech markets its products largely through two dealers, Page Beechcraft Inc., an independently owned dealer, and East, a wholly owned sub-subsidiary of Beech. Upon the completion of discovery, the district court dismissed the complaint as to all defendants in reliance upon Marantis v. Dolphin Aviation, Inc., 453 F.Supp. 803 (S.D.N.Y.1978), which also involved Beech. We reverse.
 
 DISCUSSION
 
 4
 We first dispose of two threshold issues. Fed.R.Civ.P. 52(a) states that findings of fact shall not be set aside on appeal unless clearly erroneous. VW argues that because the evidence relied on by the district court is largely documentary and generally undisputed, we can scrutinize the record more closely than Rule 52(a) would otherwise allow.
 
 
 5
 We have held that the deference given to findings of a district court varies with the extent to which the evidence is disputed and with the importance of credibility to the resolution of the dispute. Orvis v. Higgins, 180 F.2d 537, 539-40 (2d Cir.), cert. denied, 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595 (1950). Although this restriction of Rule 52(a) has received some criticism, see, e.g., 9 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2587 (1971), we have steadfastly applied it,[2] see, e.g., Shackelton v. J. Kaufman Iron Works, 689 F.2d 334, 337 (2d Cir.1982); Eutectic Corp. v. Metco, Inc., 579 F.2d 1, 5 (2d Cir.1978), and the Supreme Court recently approved it, Bose Corp. v. Consumers Union, --- U.S. ----, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984). In the present case, we need determine only the applicability of New York's jurisdictional statute in light of essentially undisputed basic facts, an issue of mixed law and fact to which the presumption created by Rule 52(a) has little if any application. Id. 104 S.Ct. at 1960.
 
 
 6
 VW also argues that it need establish only a prima facie case in order to defeat a Rule 12(b)(2) motion. We disagree. To prevail, a plaintiff must demonstrate by a preponderance of the evidence that in personam jurisdiction exists. Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir.1981). It is true that, when the issue is decided initially on the pleadings and without discovery, the plaintiff need show only a prima facie case. However, if that initial decision is contested, the plaintiff must then prove, following discovery, either at a pre-trial hearing or at trial, that jurisdiction exists by a preponderance of the evidence. Given that the district court permitted substantial discovery, VW must now be held to the preponderance burden.
 
 
 7
 Turning to the main issue, personal jurisdiction in a diversity case is determined by the law of the state in which the district court sits. Arrowsmith v. U.P.I., 320 F.2d 219 (2d Cir.1963). VW pursues two theories in seeking in personam jurisdiction over Beech under N.Y.Civ.Prac.Law Sec. 301 (McKinney 1972). It claims, first, that Beech's own activities in New York, such as solicitation and banking, are sufficient to constitute "doing business" there. See Katz Communications, Inc. v. Evening News Association, 705 F.2d 20 (2d Cir.1983). Second, it asserts that jurisdiction has been created by the activities in New York of Beech's subsidiary East. See Taca International Airlines, S.A. v. Rolls-Royce of England, Ltd., 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965). Because we agree with the second theory, we need not discuss the first.
 
 
 8
 Beech does not dispute that East is "doing business" in New York. Rather, it claims that East is an independently managed entity so separate from Beech that jurisdiction over it is not jurisdiction over Beech. It is true that the presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation. Delagi v. Volkswagenwerk AG, 29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972). However, Beech's control of East extends far beyond mere ownership and is enough to permit New York to assert jurisdiction over Beech on the grounds that East is a "mere department" of Beech under New York law.
 
 
 9
 The officers of any corporation that owns the stock of another necessarily exercise a considerable degree of control over the subsidiary corporation and the discharge of that supervision alone is not enough to subject the parent to New York jurisdiction. See Saraceno v. S.C. Johnson & Son, Inc., 83 F.R.D. 65 (S.D.N.Y.1979). However, when the activities of the parent show a disregard for the separate corporate existence of the subsidiary, New York jurisdiction may be asserted. See Public Administrator v. Royal Bank, 19 N.Y.2d 127, 278 N.Y.S.2d 378, 224 N.E.2d 877 (1967).
 
 
 10
 New York courts regard one factor as essential to the assertion of jurisdiction over a foreign related corporation and three others as important. The essential factor is common ownership. E.g., Delagi v. Volkswagenwerk AG, 29 N.Y.2d at 432, 328 N.Y.S.2d at 657, 278 N.E.2d at 897; Andrulonis v. United States, 526 F.Supp. 183, 186-87 (N.D.N.Y.1981). While jurisdiction has been found in cases other than a classic parent-subsidiary relationship, nearly identical ownership interests must exist before one corporation can be considered a department of another corporation for jurisdictional purposes. Since East is wholly owned by Beech, that requirement is met in the instant case.
 
 
 11
 The second factor is financial dependency of the subsidiary on the parent corporation. See, e.g., Boryk v. deHavilland Aircraft Co., 341 F.2d 666, 668 (2d Cir.1965) (parent made no-interest loan to wholly owned subsidiary); Public Administrator v. Royal Bank, 19 N.Y.2d at 131-32, 278 N.Y.S.2d at 381-82, 224 N.E.2d at 879 (finances of subsidiary controlled by parent); Taca International Airlines, 15 N.Y.2d at 101-02, 256 N.Y.S.2d at 131-32, 204 N.E.2d at 330 (inventory financed by parent); Rabinowitz v. Kaiser-Frazer Corp., 198 Misc. 707, 710-11, 96 N.Y.S.2d 642, 644 (1950) (parent made no-interest loans and guaranteed third party credit).[3]
 
 
 12
 The record shows that East is wholly dependent upon Beech's financial support to stay in business. In addition to owning 100% of East's stock, Beech provided East with at least 71% of its debt in 1983. Included in that debt is a $400,000 no-interest "loan" to East, as yet uncollected and without a payment date, and over $300,000 in accounts payable. These extensions of credit exceed East's cash balances. Unlike Beech's independent distributors, East has not been required to operate on a cash on delivery basis. Beech also includes East in Beech's product liability policy but does not extend the same courtesy to its independent dealers. As of the end of 1983, moreover, East owed Beech Acceptance Corp. (the finance subsidiary of Beech) over $2,200,000, while, in contrast, Page Beechcraft, a large independently owned Beech distributor in the northeast, had no loans at all from Beech Acceptance Corp. Finally, East lost $680,000 in 1982 and 1983, losses that have reduced its net worth by more than 50 percent. The second factor thus weighs entirely in VW's favor.
 
 
 13
 The third factor is the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities. See, e.g., Public Administrator v. Royal Bank, 19 N.Y.2d at 132, 278 N.Y.S.2d at 381-82, 224 N.E.2d at 879 (staff of subsidiary assigned and shifted among subsidiaries by parent); Taca International Airlines, 15 N.Y.2d at 101, 256 N.Y.S.2d at 131, 204 N.E.2d at 331 (some common officers and directors; officers transferred between parent and subsidiary); Rabinowitz, 198 Misc. at 711, 96 N.Y.S.2d at 645 (parent paid salaries of some common officers). Of course, the officers of a parent normally control the board of directors of a subsidiary in their capacity as representatives of the controlling stockholder. However, when the parent officers extend their control beyond that normally exercised by boards of directors, their behavior supports an inference that the subsidiary is not an independent entity.
 
 
 14
 In the instant case, East's five member board is comprised of the president, treasurer, and a vice-president of Beech and two officers of East. However, the president, treasurer, and a vice-president of Beech occupy the same positions at East. Beech pays the entire salaries of the three officers who serve in those positions for Beech and East. The highest ranking officer of East who is not also an officer of Beech is the vice-president and general manager. An officer of Beech stated that it was Beech policy to give the managing officer of all of Beech's marketing subsidiaries the rank of vice-president. He asserted that the fact that Beech's president was the president of East was a mere formality. This explanation at least indicates that Beech and not East decides which officers of East are to be figureheads. Moreover, Beech claimed that its policy of making the general managers of its subsidiaries vice-presidents allowed Beech to transfer executives among its subsidiaries with ease. This explanation hardly supports the argument that Beech subsidiaries are independently managed corporations. In one instance, moreover, Beech transferred a Beech officer to handle a difficult real estate transaction for East, an act evidencing the limited scope of authority Beech accords to officers of East.
 
 
 15
 Finally, while Beech argues that the independence of its subsidiaries is important, it appears that holding directors meetings for these subsidiaries is not. The general managers of the marketing subsidiaries report quarterly as a group to a marketing vice-president at Beech, with the president of Beech in attendance as an observer. While a Beech officer stated that minutes of the meetings could be taken if someone at the meeting so requested, no such minutes are in evidence. There is in fact no evidence to show that East ever held formal directors meetings, apart from these marketing meetings. The third factor thus weighs in VW's favor also.
 
 
 16
 The fourth factor is the degree of control over the marketing and operational policies of the subsidiary exercised by the parent. See, e.g., Boryk, 341 F.2d at 668 (parent's letterhead listed subsidiary as a branch); Public Administrator v. Royal Bank, 19 N.Y.2d at 131-32, 278 N.Y.S.2d at 381-82, 224 N.E.2d at 879 (parent's letterhead, general advertising, and reports to stockholders identified subsidiary as branch; subsidiary's documents were standard forms prepared by parent); Taca International Airlines, 15 N.Y.2d at 101, 256 N.Y.S.2d 131-32, 204 N.E.2d at 330-31 (parent trained subsidiary's personnel, determined policy, prepared marketing material, set prices, and issued warranties).
 
 
 17
 Beech tightly controls the operations of its marketing corporations, whether wholly owned or independently owned. The contracts Beech signs with its distributors control virtually every aspect of their marketing efforts, down to the location of Beech's signs. Beech prescribes, inter alia, the distributor's minimum inventory levels, accounting systems, insurance policies, and advertising campaigns. Distributors are not permitted to change ownership or management without prior Beech approval. Beech trains the distributors' salesmen at Beech headquarters and sends management consultants to the distributors to instruct them. East is even more dependent on Beech for such support and control because, unlike many independent distributors, East sells only Beech aircraft. We view the fourth factor as weighing in VW's favor.
 
 
 18
 After weighing these four factors, we believe that in personam jurisdiction over Beech clearly exists under New York law. In Taca International Airlines, 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329, the plaintiff, who did business in El Salvador and who was the operator of a plane that crashed in Nicaragua, successfully asserted in personam jurisdiction in New York over Rolls-Royce, a manufacturer of aircraft engines headquartered in England, on the basis of the presence of its sub-subsidiary in New York. The subsidiary and parent had common executive officers and directors assigned to their positions by the parent, executives of both companies met frequently to discuss policy, employees were trained in England by the parent, marketing materials were prepared by the parent, warranties were extended directly to the ultimate customer by the parent, and the parent financed the subsidiary's inventory. 15 N.Y.2d at 101-02, 256 N.Y.S.2d at 131-32, 204 N.E.2d at 330-31. We believe that Beech's control of East is more extensive than was Rolls-Royce's control over its local subsidiary in that case.
 
 
 19
 Marantis, the decision relied upon by the district court, stated that "Beech's relationship with East appears to fall just short of that corporate intimacy which has led to 'mere department' " status. 453 F.Supp. at 805. It distinguished Beech's relationship with East from the parent-subsidiary relationship in Taca on the grounds "that East's financial independence and its ownership of Beech products for its own account are the strongest indicia that it is not a 'mere department' of the parent." Id. at 806. The evidence in this case demonstrates that at this time Beech's financial support is necessary to East's continued existence.
 
 We must, therefore, reverse.[4]
 
 
 *
 The Honorable Charles E. Wyzanski, Jr., Senior United States District Judge for the District of Massachusetts, sitting by designation
 
 
 [1]
 VW is organized in the Federal Republic of Germany. Beech is incorporated in Delaware
 
 
 [2]
 Fed.R.Civ.P. 52 does not require findings of facts to be made on decisions rendered under Rule 12. For this reason, Professor Moore takes the position that we are not required to give deference to findings of fact on such motions when made. 5A J. Moore and J. Lucas, Moore's Federal Practice p 52.08 p. 52-176 n. 3 (1984). However, where a district court has taken evidence on such a motion, appeals courts have treated the findings as falling within Rule 52. See, e.g., Scoggins v. Pollock, 727 F.2d 1025, 1027 (11th Cir.1984); Crowley v. Glaze, 710 F.2d 676, 677-78 (10th Cir.1983); Pickens v. Hess, 573 F.2d 380 (6th Cir.1978). We adopt that position
 
 
 [3]
 Although East's financial statements are consolidated in Beech's, that is not a dispositive factor. The rules regarding the consolidation of subsidiaries are controlled by generally accepted accounting principles, which require parent corporations to consolidate subsidiaries if the parent owns more than 50 percent of the subsidiary's stock. American Institute of Certified Public Accountants, Consolidating Financial Statements, Accounting Research Bulletin No. 51, at p 2 (1959). Consolidation, therefore, does not distinguish between independent and controlled subsidiaries under New York Law
 
 
 [4]
 VW seeks to raise the venue issue. The issue was not decided by the district court and is thus not properly before us